The plaintiff claimed the slave in question under the will of her father, William W. Mallison, in which, among others, were the following clauses: "I lend unto my beloved wife, Sarah Mallison, during her natural life, or widowhood, all my negroes, and stock, all that I possess, and all my household furniture." "After my wife's decease I give and bequeath to my daughter, Mary M. Conner, one negro boy named Tom, one bed and furniture, half dozen silver table spoons, and half dozen teaspoons, one bureau, and glass. And if my negro woman Suck should have another child, I give it to my daughter, Mary M. Conner, and one loom." "After my wife's decease, I give and bequeath to my son, Francis Mallison, one negro boy named Jack, and one negro woman named (203) Suck, one feather bed and furniture, one silver ladle, one table, one chest." It was admitted on the trial that the testator had but one negro woman named Suck; that the executors proved the will and assented to the legacy to Sarah Mallison, who took possession of Suck as legatee for life; that Sarah Mallison died before the commencement of this suit; that after the probate of the will, and while she was *Page 161 
held by the tenant for life, Suck had a child named Sid, and about two years thereafter she had another child called Eli, the subject of this controversy; and that the child Sid died before the death of Sarah Mallison.
The defendant insisted that the plaintiff acquired by the bequest no title to Eli; that if she acquired title by this bequest to any child of Suck it was to Sid, and not to Eli. The defendant also insisted that if Eli was bequeathed by this clause of the will to the plaintiff, the legatee for life of Suck had no interest in him, but the plaintiff had a right to him at his birth, and that it was not a bequest to the plaintiff in remainder, and therefore the assent of the executors to the bequest of Suck for life was no assent to the bequest of Eli to the plaintiff. It was admitted that the executors refused their assent to the claim of the plaintiff to Eli, and that they never assented to such legacy, unless their assent to the legacy of Suck to Sarah Mallison for life was in law an assent to the alleged bequest of Eli to the plaintiff. His Honor intimated an opinion against the claim of the plaintiff, whereupon she submitted to a nonsuit and appealed.
We concur in opinion with the judge who presided at the trial that the plaintiff did not make out a title to the negro for which her action was brought.
In the second clause of the will which we are called on to expound the testator bequeaths to his wife all his negroes during her natural life or widowhood — and in a subsequent clause he gives, after his wife's decease, a negro boy named Jack, and negro woman Suck to his son, Francis. In the clause under which the plaintiff claims title he expresses himself thus: "After my wife's decease I give to my daughter Mary M. Conner, one negro boy named Tom, and if my negro (204) woman Suck should have another child I give it to my daughter Mary." It is probable that the testator did not contemplate the probability of Suck having more than one child; but, however this may be, it is certain that he has made no express disposition of more than one such child. To hold that he bequeathed to the plaintiff by these words all the issue, however numerous, which Suck might have, would be to extend the testator's expressions beyond their obvious import. We see no sufficient reason to justify such a license; we do not find in the will any evidence that such was the deliberate purpose of the testator, and we cannot attribute the intention to him by mere conjecture. Whether a different construction might not obtain had the words used been any child (a case put by the plaintiff's counsel), it is unnecessary to decide, *Page 162 
for if a different construction were then to prevail it would be because of the more comprehensive import of the adjective "any," rendering it susceptible of application to one or more objects, and approaching closely to that of "every." But another means one other — and it alone is given. The next inquiry is, if both the children of Suck did not pass by this clause to the testator's daughter, did either? and if so, which of them did so pass? We entertain no doubt but that she became entitled to one of these children. The gift of Suck to his son Francis carried with it, as part of Suck, all the issue she might thereafter have, with the exception of what was bequeathed to his daughter. The gift to her of the child of Suck, should she have but one, afford a moral certainty of his intent that this bounty was not to be taken away if the provision for his son from which it is excepted should prove more extensive than the testator contemplated.
The plaintiff contends that the gift to the plaintiff was to take effect at the death of the widow, and therefore must operate upon the subject, then answering to the description of the thing given. We do not assent to this position. We hold that the gift was immediate, although the possession was postponed until the widow's death. The law favors the vesting of legacies, and therefore where a disposition is made by will of a personal thing in successive fractional interests, unless there be (205) a clear manifestation of an intent, that the ulterior legatee shall not take but in the event of surviving the expiration of the interest of the preceding legatee, the bequests are in the nature of a particular estate and remainder, and both vest at the death of the testator. Thus there can be no question but that the bequest to Francis of Jack and Suck, though expressed as a gift "after his wife's decease," vested in Francis upon the death of the testator at the same moment when the bequest of them for life vested in the widow. So in the clause directly before us the gift of Tom passed an immediate interest to the plaintiff, postponed as to enjoyment only during the life of the widow. The gift of "the child which Suck might have," is part of the bequest in which Tom was given, and comes within the operation of the same rule which governs that gift. This child, though not actually in being, yet as potentially existing, was bequeathed to the widow for life, and after her death to the plaintiff. In one sense indeed the legacy may be termed contingent, because if no such child should be born, neither of the legatees would derive an actual benefit therefrom. It was therefore contingent as to possession — but the right was in no respect contingent — this was absolute — was susceptible of disposition by either of the legatees, and upon the death of the daughter before the thing given came into possession, was transmissible as a vested interest to her representatives. Considering, therefore, the bequest in question as operating upon *Page 163 
the death of the testator, so as to transfer the right to the plaintiff, and that this, her right was limited to one child only of Suck's, we are necessarily conducted to the conclusion that upon the birth of Suck's first child, that child answering fully to the terms of the gift, became the property of the plaintiff. Before its birth she was entitled to the child which Suck might have. Upon its birth she was entitled to the child which was then born. The thing given was in law always the same — though at times in a different state. Before birth it was potentially in existence, and after birth it was actually in being — the whole bounty of the testator was thereby fulfilled — and whether the thing given afterward lived or died, it lived or died the property of the plaintiff. In the circumstances which have occurred this construction is an unfortunate one for the plaintiff, but those circumstances ought not to effect the construction. If we adopt that which she now contends (206) for, viz.: that the gift was not to operate until the death of the widow, and would pass to the legatee only the thing which then answered to the description in the will — the legatee would take nothing if the widow died before Suck had issue, although such issue was born afterwards. Or if the widow had lived many years, and the first of Suck's children or Suck's only child (had there been but one) died before the widow, leaving a numerous progeny, the legatee would be entitled to none of these. Or if the legatee had died before the widow, the legacy must have lapsed, and the legatee's representatives could have claimed no benefit from it. The case comes within the range of all the motives which induce courts to favor the vesting of legacies.
On the point which was made with respect to the assent of the executor the court feels no difficulty. The assent of the executor to the taking of the thing bequeathed by the legatee for life was an assent to the subsequent interests therein bequeathed by the will. The case of Ingrams v.Terry, 2 Hawks, 122, is decisive on this point.
PER CURIAM. Judgment affirmed.
Cited: McCoy v. Guirkin, 102 N.C. 23.
(207)